# (December 14, 1961)

CITY OF PHILADELPHIA, Appellant, v. RALPH COHEN, Respondent.

STEUER, J. (dissenting). The City of Philadelphia brought this action to recover parking lot taxes which defendant, as a parking lot operator in that city, failed to pay. The complaint sets out two causes of action. As to the second, we believe it to be an artificial method of pleading the same matter pleaded in the first cause of action, and it should fail if the first cause of action falls. If the first cause of action is valid, the second is superfluous. We therefore consider the first only.

This cause of action alleges the enactment of an ordinance requiring the operators of parking lots to obtain a license and to pay a tax of 10% of the gross fees obtained from parking vehicles. It alleges that defendant from 1954 to 1959 was a resident of Philadelphia, applied for and received such a license,

and operated a parking lot. It further alleges that he made monthly returns in purported compliance with the ordinance. In December, 1958, plaintiff made an examination of defendant's books and found that defendant for the years 1954 to 1957, inclusive, had failed to remit the proper sums and that his deficiency amounted to $5,057.44. A notice of liability for this sum was duly mailed to defendant. The complaint further alleges an ordinance creating a Tax Review Board to which defendant, as a taxpayer, might have addressed a petition to review this determination of liability and that defendant failed to file such a petition within the 60 days provided in the ordinance for so doing.

It has been held that this complaint fails to state a cause of action, the reason being that this State will not entertain an action by a foreign State (or a subdivision thereof) for the collection of any tax that may be due it. There can be no doubt that the authority relied on by Special Term (*Wayne County [Mich.]* v. *American Steel Export Co.,* 277 App. Div. 585) represents the correct view of the law of this State (*State of Colorado* v. *Harbeck,* 232 N. Y. 71). Nor can we quarrel with the majority in so holding. We believe, however, that the principle rests on a foundation no longer persuasive in view of changed conditions and that the law is changing in other jurisdictions and should, at least, be re-examined here.

The principle that one State will not serve as a forum for the collection of taxes by another State had its origin in a quite different principle, namely, that the revenue laws of a foreign State cannot be invoked to excuse the performance of a contract or to defeat recovery on it (*Boucher* v. *Lawson* [1734], Cases Temp. Hardwicke, 85, 95 Eng. Reprint 53). The reason given was that to give extraterritorial effect to such statutes would be inimical to English trade (*ibid.,* 95 Eng. Reprint 53, 56). Some years later, in a case involving a like principle, the great Lord MANSFIELD coined the phrase "no country ever takes notice of the revenue laws of another" (*Holman* v. *Johnson* [1775], 1 Cowper 341, 343, 98 Eng. Reprint 1120, 1121). This terse and powerful expression has been perpetuated and iterated in its original form or in paraphrase in virtually every opinion involving the extraterritorial effect of statutes imposing financial liability. The phrase itself became the law in extension of the principle it so colorfully illustrated. Thus, 120 years later and 3,000 miles away, we find Judge DENIS O'BRIEN stating: "It has been held, and is a principle universally recognized, that the revenue laws of one country have no force in another" (*Marshall* v. *Sherman,* 148 N. Y. 9, 25). The case did not involve a revenue law. In fact, it is the foundation case in this State for the proposition that we will not entertain a suit for the collection of a statutory assessment placed on stockholders of an insolvent bank by foreign statute. And the phrase has now proceeded to govern cases like the one in issue here. "The rule is universally recognized that the revenue laws of one state have no force in another" (*State of Colorado* v. *Harbeck, supra,* p. 85 [POUND, J.]). Thus, an expression uttered in connection with private litigation has now had the effect of barring a foreign sovereign from suing to collect taxes, an appreciable extension of the original idea of not allowing a foreign revenue law to interfere with the enforcement of a private contract.

It is true that not every claim for taxes can be satisfactorily adjudicated outside the jurisdiction of its imposition. And in the two cases relied on, certain difficulties were shown to be present. We do not seek to distinguish the cases on that ground because the principle of absolute denial of access stands as the dominating ground of decision. Where such difficulties exist they may well prevent recovery in the particular case. Also, a defense that the statute may contravene our public policy would not be precluded.

Such a rigid distinction between tax collections of other States and suits for local taxes, resulting in the absolute exclusion of the former, has no basis in public policy and should not be reflected in the law. A tax evader remains a tax evader even though he crosses a State boundary, and it is difficult to discover what purpose is served by making immunity a concomitant of his defection. Certain States have allowed tax recoveries by sister States for these reasons.* The Restatement of Conflict of Laws abandoned the rule, previously advocated by it, in 1948, and now takes no position in regard to it (1948 Supp. § 610). Writers on the subject are critical of the rule (29 Col. L. Rev. 782; 18 Cornell L. Q. 581; 46 Harv. L. Rev. 193; 47 Mich. L. Rev. 796).

The traditional grounds no longer exist, if they ever did. Firstly, tax laws and penal laws are not the same and considerations valid against enforcing the one are pointless as against the other. Nor today is distance from the source of the obligation a factor. Surely if the taxing authority can journey to prove a case, the tax debtor should not complain. No extra burden is put on our courts by these comparatively rare applications, and any extra work would be more than compensated for by the facility which our own taxing authorities would enjoy beyond our borders.

The order should be reversed and the motion denied.

* Arkansas — *State of Oklahoma* v. *Neely,* 225 Ark. 230. Illinois — *City of Detroit* v. *Gould,* 12 Ill. 2d 297. Kentucky — *Ohio* v. *Arnett,* 314 Ky. 403. Missouri — *State of Oklahoma* v. *Rodgers,* 238 Mo. App. 1115. N. C. — *Holshouser* v. *Gold Hill Copper Co.,* 138 N. C. 248.

McNally P. J., Stevens and Bastow, JJ., concur in decision; Steuer, J., dissents and votes to reverse and deny the motion in opinion in which Eager, J., concurs.

Order and judgment dismissing the complaint, affirmed on the authority of *Wayne County (Mich.)* v. *American Steel Export Co.* (277 App. Div. 585), with costs to defendant-respondent.